

Copies Mailed/Faxed
Chambers of Edgardo Ramos

**MEMO ENDORSED**

**JAMES E. JOHNSON**
*Corporation Counsel*

T<small>HE</small> C<small>ITY OF</small> N<small>EW</small> Y<small>ORK</small>
**L<small>AW</small> D<small>EPARTMENT</small>**
100 C<small>HURCH</small> S<small>TREET</small>
N<small>EW</small> Y<small>ORK</small>, NY 10007

**E<small>VAN</small> J. G<small>OTTSTEIN</small>**
*Assistant Corporation Counsel*
Tel: (212) 356-2262
Fax: (212) 356-3509
egottste@law.nyc.gov

January 4, 2021

**By ECF**
Honorable Edgardo Ramos
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    **Towaki Komatsu v. City of New York, et al.**
                **20-CV-8004 (ER) (GWG)**

Your Honor:

      I am an Assistant Corporation Counsel in the Office of James E. Johnson, Corporation Counsel of the City of New York, and the attorney assigned to the defense of the above-referenced matter.[1]  I write in response to the Court's Order of Service dated November 2, 2020 (ECF No. 5),[2] and to respectfully request a stay of further identifications of "Doe" individuals.

      By way of background, plaintiff initiated nine lawsuits between August 29 and November 22, 2020, totaling 1,713 pages in pleadings, alleging that numerous City employees unlawfully prevented him from attending or speaking at public events in 2017.  Plaintiff filed the 227-page complaint in the instant matter on September 25, 2020, alleging, *inter alia*, that he was prevented from attending the following three events in Manhattan: a town hall on September 26, 2017; a

---

[1] This office currently represents defendants City of New York and Mayor de Blasio in this matter.  As additional defendants are served and request representation, this Office will make representation determinations regarding those defendants.

[2] Citations to docket entries in this letter refer to the ECF-designated document numbers for the docket sheet of this individual case.

public resource fair on September 27, 2017; and a town hall on September 28, 2017.[3]  Plaintiff names as defendants the City of New York, Mayor de Blasio, former NYPD Commissioner James O'Neill, the former Commissioner of the Mayor's Community Affairs Unit, Manhattan Borough President Gale Brewer, and 17 named individuals from multiple City agencies whom plaintiff alleges did not give him an admission ticket or otherwise prevented him from attending the events on September 26-28, 2017.  Plaintiff also attempts to sue 18 unidentified "John/Jane Doe" individuals who were present at these events.  The complaint contains photographs of the unidentified individuals whom plaintiff intends to sue.  (*See* Compl. at 48-57)

In the November 2, 2020 Order, the Court directed this Office to ascertain the identities and service addresses of 17 of the "Doe" defendants: "in connection with the 9/26/17 incident, 'John Doe 1 tablet,' John Does 1 and 2, and Jane Does 1-3; in connection with the 9/27/17 incident, John Does 1-4; and in connection with the 9/28/17 event, John Does 1-3 and Jane Does 1-4." (ECF No. 5)

### 9/26/17 Town Hall

With respect to the individual depicted in row 6 of the chart on page 50 of the complaint as "John Doe 1 tablet," upon information and belief, this individual is not a member of the NYPD but rather worked for the Mayor's Community Affairs Unit ("CAU") on September 26, 2017.  We have been unable to ascertain his name at this time.  In our investigation, we learned the official from the Mayor's Office who was most knowledgeable about staffing at these events is deceased, which has made it more difficult to identify the Mayor's Office employees who worked at these events.[4]

### 9/28/17 Town Hall Event

With respect to the individual depicted in row 13 of the chart on page 54 of the complaint as "NYPD Officer John Doe2," plaintiff provides two photographs: one that was from a video that plaintiff recorded at the event in question on September 28, 2017, and one from a video that

---

[3] Plaintiff's complaint concedes that he was not entirely prevented from attending these events, because he was permitted to watch the events live in "overflow" rooms at each respective venue, but chose not to do so.  The complaint alleges that plaintiff was unable to sit in the particular room where the Mayor spoke at these events.

[4] Based on the November 2 Order of Service, it does not appear that this Office is required to identify the non-NYPD individual in row 7 of the chart on page 51 of the complaint designated as "Jane Doe3 9/26/17" (as opposed to "NYPD Officer Jane Doe3 9/26/17" depicted on page 50 of the complaint).  In an abundance of caution, we have identified the individual in the *second* photograph in row 7 of the chart on page 51 of the complaint as Gabrielle Dann-Allel, who currently works at City Hall as a legislative representative in the Mayor's CAU.  However, this photograph was taken from a *New York Times* article about a completely different event, and we cannot determine whether she is the same individual depicted in the *first* photograph of "Jane Doe3" on page 51 of the complaint, which was recorded on the date of the incident at issue.

plaintiff recorded on October 25, 2017. The video recorded on the date of the incident at issue in this case does not provide a sufficiently clear picture of this individual to allow him to be identified. However, upon information and belief, the individual depicted in the second photograph at the bottom of page 54, which is from a video recorded on October 25, 2017, is Sergeant Gilot Lemorin, who is currently assigned to the Midtown North Precinct and may be served at 306 West 54th Street, New York, New York 10019.

**Remaining Unidentified Officers**

Regarding the remaining five officers from the September 26 event, this Office is unable to identify the NYPD officers depicted in rows 1 and 3-5 of the chart on pages 48-50 of the complaint based on the allegations and the photos provided of them in the complaint. The images provided by plaintiff in the complaint are insufficiently clear to permit identification. (*See* Compl. at 48-50)

This Office is also unable to identify the remaining members of the NYPD depicted in the chart from page 50 to page 57 of the complaint. Based on their uniforms, some of these individuals were uniformed officers and others were civilians from the NYPD's School Safety Division. For the uniformed officers, it is unclear from the photographs in the complaint what command each officer was assigned to on the date of the incident.[5] Regarding the school safety agent "Doe" defendants, identification of those individuals is highly burdensome as the NYPD's School Safety Division employs approximately 5,511 school safety agents. The School Safety Division has been unable to identify any of these individuals.

**Application for Stay of Further Identifications**

Further efforts to identify these individuals would place an undue burden on the City and would constitute an inefficient use of scarce City resources. So far, the three cases for which the Court has issued *Valentin* orders have required this Office to attempt to identify *at least* 23 putative potential defendants.[6] The burdens imposed by plaintiff's numerous prolix filings that have required responses from defendants have made it all the more difficult for the City to proceed with normal business and comply with the Court's *Valentin* orders on the prescribed timelines.

---

[5] The security details for these events could have included officers from multiple different commands. For example, based on the event location, uniformed officers working security at the September 27 event could have been members of the 33rd Precinct, Patrol Borough Manhattan North, and/or Police Service Area 5. The photographs of the "Doe" uniformed members of service do not show any information such as the numbers on the officers' shields or even the command pins on their shirt collars to help this Office identify these officer's commands, let alone their names and service addresses.

[6] There are also approximately 47 more "Doe" defendants named in plaintiff's six other consolidated cases.

Identifying the "Doe" individuals in this case is also more burdensome than usual because the people involved in the events at issue come from several different police commands and City agencies. Since there is no one single document that lists every City employee from all agencies attending each event, identifying all of these John/Jane Does requires review of records from multiple City agencies and commands, and possibly interviewing dozens of City employees.

Plaintiff should undertake to identify the defendants himself from his apparently extensive knowledge of City officials from allegedly frequent dealings through numerous Mayoral and City Council meetings. Plaintiff alleges that he interacted directly with some of these purported defendants at the events in question, and in some cases would have dealt with them at more than one event. Therefore it is not unreasonable to expect plaintiff, a frequent and prolific litigant, to undertake the burden of identifying the persons he intends to sue, either before bringing suit or through normal discovery (if that were otherwise warranted).

To the extent that plaintiff did not interact with the individuals named, that is all the more reason to believe that they are not proper defendants and it would impose an undue burden to require the City to identify them. For example, for several of the John/Jane Doe officers, the complaint alleges no personal involvement other than speculating that the officers "were in sufficiently close proximity to [plaintiff] to have been aware that [he] was being prevented from attending" the events in question and failing to force other City employees to let him into the events. (Compl., ECF No. 2, at 176-77) Most of these individuals are not alleged to know anything about plaintiff's situation or were not part of the process of creating the guest lists.[7] Thus, even if these individuals were ultimately added as defendants and were properly served, there would be numerous grounds for their immediate dismissal from this case.

City resources are especially scarce at this time due to a severe fiscal crisis resulting from the severe economic contraction arising from the COVID-19 pandemic and New York State's efforts to control it through restrictions on economic activity. Personnel resources of the NYPD are especially strained, along with all City agencies. For example, the NYC Law Department has required its attorneys to take monthly unpaid furlough time in order to mitigate the fiscal shortfall.

Plaintiff has engaged in a campaign of repetitive and frivolous litigation that has already imposed extraordinary burdens on the City and the Court, equivalent to that which would be imposed by dozens of more typical plaintiffs. He has done this at taxpayer expense, each time proceeding *in forma pauperis*. The Court may provide plaintiff with due process without the imposition of further extraordinary burdens on the City, before there has been an opportunity for the Court to assess the potential merit of plaintiff's allegations.

---

[7] For example, the individual labeled "NYPD John Doe4 9/27/17" appears for less than one second in one of several videos recorded by plaintiff, and he has his back turned to plaintiff during that brief time.

Accordingly, defendants respectfully request that, until such time as the Court hears and decides a motion to dismiss plaintiff's complaints, the Court stay the effect of the Court's November 2, 2020 Order requiring this Office to continue taking steps to attempt to identify the remaining 16 John/Jane Does named in the complaint. Defendants reserve their right to move to stay any similar orders in other cases filed by plaintiff, and object to any proposed amendments of the complaint to name new defendants.[8]

Defendants thank the Court for its consideration herein.

Respectfully submitted,

*Evan J. Gottstein*            /s/
Evan J. Gottstein
*Assistant Corporation Counsel*
Special Federal Litigation Division

cc:   **Via First-Class Mail**
      Towaki Komatsu
      *Plaintiff Pro Se*
      802 Fairmount Pl., Apt. 4B
      Bronx, New York 10460

> The request is GRANTED. Defendants' obligation to identify John Doe defendants is stayed pending the resolution of the anticipated motion to dismiss. IT IS SO ORDERED.
>
> _____
> Edgardo Ramos, U.S.D.J
> Dated: 1/5/2021
> New York, New York

---

[8] Per the Court's Order dated December 29, 2020 (ECF No. 25), defendants will separately submit their response to plaintiff's request to file an amended complaint in the lead case, 20-CV-7046 (ER) (GWG), to include allegations about a January 8, 2018 event, by the Court-imposed deadline of January 8, 2021.